# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 15-CR-74-4-JPS |
| JERROD PATTERSON, | **ORDER** |
| Defendant. | |

**1. BACKGROUND**

For six years, Jerrod Patterson ("Patterson") sat in federal custody with a state detainer hanging over him. He has been ineligible for federal programming because of the detainer, and, despite this Court ordering that his federal sentence run concurrent to his state sentence, he faces an additional 32-month state sentence upon being released from federal custody. For years, Patterson has been writing to the state and federal courts to obtain relief and seek clarification. Until only recently, the Court's best—but inadequate—attempts to understand Patterson's requests resulted in his continued limbo. On March 15, 2022, Patterson filed an unopposed motion for compassionate release. ECF No. 169. Thanks to effective counsel by the Federal Defender Services of Wisconsin, Inc. ("FDS"), the Court will provide relief to Patterson by granting him compassionate release and reinstituting the goals of this Court's original sentence.

## 2. FACTS

### 2.1 Patterson's Federal Sentence

On February 14, 2013, after Patterson finished serving a state sentence in Kenosha County Case Number 09CF927, the Wisconsin Department of Corrections (the "DOC") released him to a two-year term of extended supervision. ECF No. 108 at 25–27. While on extended supervision, Patterson violated the terms of his release, and the state issued a warrant for his arrest. *Id.* at 27. However, before the state could arrest Patterson on that warrant, he was arrested on federal drug-distribution charges. *Id.* These charges resulted from a multiyear investigation conducted by the Federal Bureau of Investigation, the Drug Enforcement Administration, and the Kenosha Police Department. *Id.* at 10–17. Patterson was indicted on April 21, 2015, ECF No. 1, and he entered a plea of guilty as to one count of the Indictment on November 16, 2015, ECF No. 82.

Ultimately, on February 18, 2016, this Court sentenced Patterson as follows:

> The defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of One-Hundred-Twenty-Five (125) months as to Count Four of the Indictment. *This sentence shall operate to run concurrent with any sentence the defendant might receive in pending revocation proceedings in Kenosha County Circuit Court Case No. 09CF927.*

ECF No. 112 at 2 (emphasis added). Patterson is currently being held at FCI Fort Dix in New Jersey. His expected release date from federal custody is October 30, 2024.[1]

---

[1] *Find and Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 16, 2022).

### 2.2 Patterson's State Revocation Proceedings[2]

On April 11, 2016, two months after his federal sentencing hearing and while Patterson was in federal prison, Kenosha County Circuit Court (the "Kenosha Court") Judge Mary Kay Wagner ("Judge Wagner") revoked Patterson's term of extended supervision and ordered him to serve approximately 32 months in custody.[3] ECF No. 169 at 4. A state detainer was placed on Patterson.

At a July 11, 2019 telephonic conference, an agent for the DOC, Jacqueline Gatlin, informed the Kenosha Court that "she was recently advised to start [Patterson's] time and therefore he will discharge from [the state] case while incarcerated and the detainer should be dropped within 30-60 days."[4] The Court takes this to mean that the DOC would consider Patterson's state-revocation term to have run during his federal sentence; because 32 months had already passed, the custodial portion of Patterson's state-revocation term was, therefore, complete.

---

[2]The Court draws its facts in this section from FDS's motion, the often-confusing state court docket, and the documents that the Court was able to obtain from the Kenosha Court, attached hereto, ECF Nos. 170-1, 170-2, 170-3, 170-4, 170-5.

[3]Kenosha County Court Case Number 2009CF000927, *State of Wisconsin v. Jerrod D. Patterson*, Wis. Cir. Ct. Access https://wcca.wicourts.gov/caseDetail.html?caseNo=2009CF000927&countyNo=30&index=0&mode=details (last visited Mar. 16, 2022). The Court obtained a copy of the docket entry for the revocation, titled "Notice of case status change." ECF No. 170-5. This document and the state court docket contain little to no information about the specific outcome of the revocation. The Court relies on Patterson's statement that he was revoked for 32 months.

[4]Kenosha County Court Case Number 2009CF000927, *State of Wisconsin v. Jerrod D. Patterson*, Wis. Cir. Ct. Access https://wcca.wicourts.gov/caseDetail.html?caseNo=2009CF000927&countyNo=30&index=0&mode=details (last visited Mar. 16, 2022).

Months later, the detainer remained in place. At a hearing on November 20, 2019, another DOC agent, Adrienne Scholfield, told the Kenosha Court that the detainer remained in place and prevented Patterson from receiving programming while he was in federal custody.[5] Judge Wagner ordered "that the 2yrs of extended supervision imposed in this case [was] to be served concurrently with [Patterson's] Federal case 15CR074."[6] She issued an amended judgment of conviction reflecting this order. ECF Nos. 170-1, 170-2. The language of the amended judgment suggests that Judge Wagner believed that Patterson's entire state revocation sentence was to operate to run concurrent to his federal, custodial sentence. ECF No. 170-2

Still though, the detainer continued in place, prompting Judge Wagner (at the behest of the state ADA, Jessica Krejcarek ("ADA Krejcarek")), to call DOC Agent Barb Hanson ("Agent Hanson") on March 2, 2020. ECF No. 170-1. The Kenosha Court sent the amended judgment to Agent Hanson, along with the minutes from the November 20 hearing. It appears that Agent Hanson initially agreed that the detainer needed to be lifted. However, on April 6, 2020, Agent Hanson sent a letter to the Kenosha Court, stating, in part:

> When we spoke, I assumed that there was a clerical error or misrouting of some kind which kept the detainer in place. I was wrong in that assumption.
>
> It is the [DOC's] position that Mr. Patterson was an absconder at the time of his arrest for the Federal drug charges. As a result, pursuant to Wis. Stat § 973.15(5), Mr. Patterson was not made available to another jurisdiction in a lawful manner.

---

[5]*Id.*

[6]*Id.*

> Therefore, he is not entitled to credit on his state sentence for time served on his federal sentence.

*Id.* The letter then provided a brief discussion of a Wisconsin appellate court case, which Agent Hanson believed was dispositive, *State v. Brown*, 711 N.W.2d 708 (Wis. Ct. App. 2007). *Id.* Judge Wagner agreed. On July 9, 2020, at a telephonic conference call, whereat Patterson appeared by Zoom without counsel, the Kenosha Court advised Patterson "that the WI sentence is not allowed to run concurrent to the Federal sentence" and recommended "that [Patterson] contact the Federal Public Defender's office to see if he can be extradited to WI to serve the WI sentence."[7]

On December 28, 2020, Patterson filed a motion with the Kenosha Court asking that the court remove his detainer.[8] Judge Wagner scheduled a telephonic status hearing and ordered that Patterson appear by telephone.[9] The hearing proceed on February 3, 2021. ADA Krejcarek appeared by Zoom. A DOC agent, Jessica Cis ("Agent Cis"), appeared by Zoom. The Kenosha Court could not arrange a phone line for Patterson, yet, confoundingly, Judge Wagner proceeded forward with the hearing whereat all parties except for Patterson were afforded the opportunity for argument. Agent Cis stated that the detainer would remain in effect, presumably in accordance with Agent Hanson's legal analysis in her letter. ADA Krejcarek stated that "unless the federal court allows him to return to WI there is nothing that can be done by [the state court]." Judge Wagner

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

took no action, essentially allowing Patterson's motion to die on the docket without a written order.[10]

Patterson then filed a series of motions with the Kenosha Court to vacate his revocation. Judge Wagner retired, and Patterson's case was reassigned to Judge Jason A. Rossell ("Judge Rossell"). ECF No. 170-4 at 1. On October 5, 2021, Judge Rossell entered an order denying Patterson's requests for relief. *Id.* In a two-page order that cites no authority (other than references to Agent Hanson's letter, which was attached to the order), Judge Rossell wrote that the Kenosha Court was barred from allowing Patterson to receive state credit for his time served in federal custody. *Id.*

### 2.3  Patterson's Federal Motions

In September 2020, Patterson began writing to this Court for relief from his state detainer. He submitted motions asking the Court to allow him to serve his federal sentence in state custody; to lift his state detainer; to reduce his sentence; and to provide clarification. ECF Nos. 144, 147, 151, 152, 159, 161. His cited reasons were often about his wish to receive programming. For various reasons, the Court determined that it was constrained from helping Patterson (e.g., that the Court cannot dictate where a defendant serves his sentence, *Tapia v. United States*, 564 U.S. 319, 331 (2011)).

As these motions were filed, the Court reached out to the Bureau of Prisons (the "BOP"), FDS, and the probation department for the Eastern District of Wisconsin to seek clarification on Patterson's situation. These

---

[10]Judge Wagner sent Patterson a letter on February 19, 2021. It appears that this letter informed Patterson that the Kenosha Court had no authority to assist him. ECF No. 170-2 at 2.

entities and the Court ultimately determined that they could not help Patterson; his relief could be sought only in the state court.

Between September and October 2021, Patterson submitted his three clearest motions. ECF Nos. 163, 164, 165. They provided the Court with a fuller sense of Patterson's situation. The Court obtained a copy of Agent Hanson's letter and reviewed the legal analysis therein; the Court also spoke briefly with ADA Krejcarek about the February 3, 2021 hearing. After its initial review, sensing that something was amiss, the Court contacted FDS to assist Patterson. FDS accepted and filed the present motion for compassionate release with the Government's agreement to not oppose it. ECF No. 169

3. **LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A) instructs that a reduction must be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." The commentary to the relevant policy statement explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i).

This circuit, however, has held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)].[11]" *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

4.  **ANALYSIS**

First, the Court notes that it need not consider whether Patterson exhausted his administrative remedies. The Government does not oppose

---

[11]"Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

Patterson's motion and, therefore, does not challenge whether he exhausted his administrative remedies. *Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). The Court next determines whether Patterson has an extraordinary and compelling reason warranting his release.

While the Court is typically asked to grant compassionate release in cases where the defendant is profoundly ill or where he is especially prone to severe complications from COVID-19, as discussed above, the Court may consider reasons beyond illness to grant compassionate release. Indeed, the Seventh Circuit has contemplated that compassionate release may be granted where sentencing laws change to become less severe after a defendant was sentenced under them. *United States v. Black*, 999 F.3d 1071, 1075 (7th Cir. 2021) ("Congress's policy choice not to make the changes to § 924(c) categorically retroactive does not imply that district courts may not consider those legislative changes when deciding individual motions for compassionate release like this one. To the contrary, the purpose of compassionate release under § 3582 is to allow for sentencing reductions when there is no statute affording such a reduction but where extraordinary and compelling reasons justify that relief."). Here, the Court finds that Patterson has presented extraordinary and compelling reasons warranting early release from his federal sentence.

### 4.1 Due Process Failures

The Court will start with the seeming lack of due process that Patterson received in the Kenosha Court. At its highest level, due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature

Page 9 of 17
Case 2:15-cr-00074-JPS    Filed 03/17/22    Page 9 of 17    Document 170

of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). On February 3, 2021, Judge Wagner proceeded with a hearing on Patterson's motion to remove the state detainer without Patterson present. Judge Wagner had ordered Patterson to appear by phone—all parties expected Patterson to be present at this hearing to argue on behalf of himself. Yet, when the time came, Judge Wagner did not give Patterson this opportunity for mere technology reasons. The adversarial process was totally one-sided at this hearing. Due process was ignored.

### 4.2 Agent Hanson's Letter, Wisconsin Statute § 973.15(5), and *State v. Brown*

Judge Wagner's lack of an order on Patterson's motion and Judge Rossell's order denying Patterson relief were both predicated on Agent Hanson's letter. Judge Rossell's order, in particular, contains no citations or authority; it simply references and attaches Agent Hanson's letter. ECF No. 170-4 at 3. The Court assumes that the Kenosha Court relied on the legal analysis therein.

Under Wisconsin Statute § 973.15(5),

> A convicted offender who is made available to another jurisdiction under ch. 976 or in any other lawful manner shall be credited with service of his or her Wisconsin sentence or commitment under the terms of s. 973.155 for the duration of custody in the other jurisdiction.

Wis. Stat. § 973.15(5). According to Agent Hanson's letter, "[b]ecause Mr. Patterson was not made available to federal authorities in a lawful manner, he is not entitled to credit for the time spent in federal custody against his Wisconsin sentence." *Id.*

The letter cites *Brown* to support its conclusion. ECF No. 170-3. In that case, a state criminal defendant, Brown, violated the terms of his state-ordered probation. *Brown*, 711 N.W.2d at 709. He was arrested by

Milwaukee Police, and the state trial court revoked his probation and ordered Brown to serve his sentence at Dodge Correctional Institution ("Dodge"). *Id.* Before he arrived at Dodge, however, he was "turned over to federal authorities and was convicted of two federal drug dealing charges." *Id.* Brown completed his federal sentence in a federal institution. *Id.* Upon completion of the federal sentence, he was transferred to state authorities to serve his state sentence.

While serving his federal sentence, Brown "believed that he was receiving credit towards his state sentence." *Id.* Thus, once transferred back to state custody to serve out his revocation, Brown challenged his continued incarceration. *Id.* at 710. The Wisconsin Court of Appeals stated that,

> [w]hether Brown entered a Wisconsin prison before starting his federal sentences, or whether his federal sentences "were in connection with the course of conduct for which sentence was imposed" is not the correct test. The question to be answered is whether Brown falls within the ambit of Wis. Stat. § 973.15(5), which is the specific statute governing this case.

*Id.* at 711. The appellate court went on to hold that Brown was, in fact, covered by Section 973.15(5). While "[l]ittle [was] known from the record about the procedure that led to Brown's being made available to federal authorities, or why he was not returned to Wisconsin authorities to begin his earlier sentence," Brown was a convicted offender and he had been turned over to federal authorities by state authorities. *Id.* Therefore, Section 973.15(5) "dictate[d] that Brown be given sentencing credit for the 'duration of custody in the other jurisdiction.'" *Id.* at 711–12 (quoting Wis. Stat. 973.15(5)). In summary, for Section 973.15(5) to *require* that a defendant receive credited time on his state sentence, courts must engage in a "two-part inquiry": (1) the defendant must be a "convicted offender" at the relevant time, and (2) the state must have made the defendant available to

the other jurisdiction. *State v. Lira*, 950 N.W.2d 687, at *5 (Table) (Wis. Ct. App. 2020).

In Patterson's case, he meets part one. Patterson was a convicted offender on extended release at the relevant time. As to part two, "'made available to' means that the State released the offender to another jurisdiction in a lawful manner." *Id.* Here, the state of Wisconsin never made Patterson available to federal authorities. Unlike Brown, who was arrested by Milwaukee police and later handed over to federal authorities, Patterson was always under federal control in relation to his federal charges. His arrest followed a federal indictment and a warrant issued by the federal court—the state warrant was beat out by the federal arrest. Thus, Section 973.15(5) does not *require* that Patterson receive credited time on his Wisconsin sentence for time he served for his federal sentence. Agent Hanson was correct in that Patterson was not "entitled" to receive credit for his Wisconsin sentence while he serves his federal sentence in federal prison. ECF No. 170-3.

However, nowhere in § 973.15(5) has the Wisconsin legislature *prohibited* a state court from crediting time in federal custody, even when its requirements are not met. Twice, the Kenosha Court twisted the legal analysis of the letter to hold that § 973.15(5) prohibited the court from giving Patterson credit.[12] The Supreme Court of Wisconsin has been clear about this practice:

---

[12] Judge Rossell entirely foreclosed on Patterson's ability to seek sentencing credit in the state court: "[i]f [Patterson] wishes to challenge this determination[,] the correct method would be a motion for sentence credit, alleging that he is entitled to credit and the basis on which he is entitled. [I.e.,] he was in state custody and lawfully given over to federal custody. However, [Patterson] agrees with the Department of Corrections that he was in absconder status at the time, there is no basis for credit." ECF No. 170-4 at 2.

> We do not read words into a statute regardless of how persuasive the source may be; rather, we interpret the words the legislature actually enacted into law. Under the omitted-case canon of statutory interpretation, [n]othing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered. One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning.

*State v. Fitzgerald*, 929 N.W.2d 165, 177 (Wis. 2019) (internal quotations and citations omitted). The Kenosha Court may not have been required to credit Patterson's federal time to his state sentence, but prior to Agent Hansen's letter, it was going to credit the time—Judge Wagner had issued an order and an amended judgment stating as much. The two judges on the Kenosha Court told Patterson that they were prohibited from crediting his time based on the faulty adoption of the analysis in a letter submitted by the DOC. Based on the record before the Court, nothing legally prevented the Kenosha Court from ordering that Patterson's federal time be credited toward his state revocation sentence.

### 4.3 The State Sentence's Effect on Patterson's Federal Sentence

When this Court sentenced Patterson, it contemplated that the federal sentence would operate to run concurrent to Patterson's state revocation sentence. ECF No. 112 at 2. As discussed above, *supra* Section 4.2, if Wisconsin did not wish to allow Patterson to earn credit on his state revocation sentence for his time served in federal custody, it appears it did not have to. But the record indicates that Judge Wagner did want to credit Patterson's time. Based on copies of Patterson's DOC records, as provided by FDS, the DOC did not originally intend for Patterson's release to be

revoked.[13] ECF No. 169 at 5. The parties would not be here today but for Agent Hanson's letter and the Kenosha Court's adopting its reasoning without analysis. Left unchecked, Patterson will spend 32 more months in prison than the Court intended—32 more months than even the Kenosha Court intended prior to Agent Hanson's letter.

### 4.4 The § 3553(a) Sentencing Factors

Reducing Patterson's sentence now does not result in a windfall to him. Not only has he spent that last six years in federal custody with a detainer making him ineligible for programming, but, upon release from his federal sentence, Patterson will begin to serve a 32-month state sentence. His approximate release date will be in November of 2024, very close to his current federal release date of October 30, 2024. In other words, granting Patterson's motion now essentially produces the total 125-month sentence that the Court originally envisioned. To that end, the § 3553 factors weigh in favor of "release."

In not opposing this motion, the Government asks that the Court order the amended federal sentence to run consecutive to the state sentence. ECF No. 169 at 8. Doing so should ensure that Patterson's state sentence is not later adjusted to credit him for time spent in federal custody (perhaps in response to this Order). The Court agrees; the forthcoming amended judgment will reflect that Patterson's federal sentence is to operate to run consecutive to the state sentence. The Court will also order that his federal supervised release operate to run concurrent to his state sentence.

---

[13]"[DOC Agent Jones] agreed that given the significant prison time in the federal system . . . his case should not have been revoked." ECF No. 169 at 5.

Page 14 of 17
Case 2:15-cr-00074-JPS    Filed 03/17/22    Page 14 of 17    Document 170

5. **CONCLUSION**

The Court closes with an observation. Time and time again, the Kenosha Court told Patterson that his only prayer for relief was with this Court. Today, Patterson is getting just that—but under no ordinary circumstances. The Court's granting compassionate release to Patterson demonstrates just how extraordinary the underlying facts in this matter are. This Order is not the Court sitting in review of the state court but rather discussing the absurdities that brought Patterson to the federal court for help.

The parties are here because the Kenosha Court made serious errors that it did not examine and correct upon Patterson's motions. The Kenosha Court could have provided relief (or at least better explained its reasoning and legal basis for not doing so), but it did not. This is all the more puzzling considering that it originally intended to produce the outcome achieved today by compassionate release. Patterson has been trying to obtain relief for years. Although the Kenosha Court punted the issue to this Court multiple times, without the full picture, the Court was unable to help Patterson in his earlier attempts. While this resulted in Patterson sitting in federal prison without programming, fortunately, it did not significantly increase his time in custody.

Patterson has proffered an extraordinary and compelling reason warranting early release from his federal sentence. Therefore, the Court will grant Patterson's motion for compassionate release, ECF No. 169. The Court will deny as moot all other motions pending on the docket. ECF Nos. 163, 164, 165, 168.

Accordingly,

**IT IS ORDERED** that Defendant Jerrod Patterson's motion for compassionate release, ECF No. 169, be and the same is hereby **GRANTED**;

**IT IS ORDERED** that Defendant Jerrod Patterson's other pending motions, ECF Nos. 163, 164, 165, 168, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Jerrod Patterson's sentence be and the same is hereby reduced to "time served" and is to run consecutive to his state sentence in Kenosha County Circuit Court Case No. 09CF927;

**IT IS FURTHER ORDERED** that this Order is **STAYED** for up to fourteen (14) days in order to complete any of the following, as may become appropriate and necessary: make appropriate travel arrangements and coordinate with the Wisconsin Department of Corrections for Jerrod Patterson's transfer. If these items have already been addressed, then Defendant must be released promptly. If more than fourteen days are needed, the parties shall immediately notify the Court and show cause why the deadline should be extended;

**IT IS FURTHER ORDERED** that upon release from imprisonment, Defendant shall be remanded to the custody of the Wisconsin Department of Corrections and be placed on supervised released for a term of Three (3) years to operate to run concurrent to his sentence in Kenosha County Circuit Court Case No. 09CF927 and subject to the conditions set forth in the amended judgment; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to release Defendant Jerrod Patterson from federal incarceration

in accordance with this Order and pursuant to the amended judgment, which follows.

Dated at Milwaukee, Wisconsin, this 17th day of March, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge